Good morning, Your Honors. May it please the Court, John Crouchley appearing from the Federal Public Defender's Office on behalf of the appellant Todd Tibbs. Your Honor, if I may, I'd like to reserve two minutes. You'll have to help keep track of your time. I will, Your Honor. Your Honors, this appeal involves a single issue, a single claim. And that is the omission of an essential element of first-degree attempted murder from the instructions given to the jury in Mr. Tibbs' case. That element was the, actually three elements, willful, deliberate, and premeditated. The State Court and the District Court essentially found no harm, no foul, because there was an instruction in connection with another count, Count 1. The count at issue in this case, in this appeal, is solely the attempted murder count, which was Count 2. There was an instruction given in connection with Count 1 in the case, which gave that definition, a willful, deliberate, premeditated. That's what distinguishes first-degree murder from second-degree murder and first-degree attempted murder from second-degree attempted murder. But why wouldn't the jury naturally have carried over that thought? Because the two sets of instructions are very close together. It explains that these elements are required for murder, and then says also attempted murder, you have murder, but then it's a substantial step, and so forth. Why isn't that a permissible understanding sufficient to not meet the ENPA requirement for overturning this verdict? In this case, Your Honor, the trial court judge gave the jury certain admonitions, made statements to the jury, and gave them instructions that really compartmentalized Count 1 from Count 2. And we, frankly, embrace the proposition, the rule, that jurors do follow instructions very carefully. And the judge told them, this is quoted in our brief, and these two references are in the excerpts at pages 112 and 120. The judge said, as a preface to the instructions, he said, sometimes these become, I apologize in advance, some of these will be repetitive. The reason for that is we want to have all the information on each one of the instructions, even though we may have mentioned it somewhere before. Later on, during the instructions themselves, the judge told the jury, the act and the specific intent and mental state required are explained in the instruction for that crime or allegation. But it also said, pay attention to all the instructions and please consider them together. Correct. And that's a perfectly appropriate instruction. And the definition that was given in the murder count was the same that would have been given. And it was correct, right? Yes. Okay. It is the same. It's a correct instruction. But it was not given to the jury. And if you look at the, it's in the excerpts at pages 127 and 128, the instructions are given by count. The instructions for count one go through the various elements of first degree murder. It gives that definition and then it stops. It's sort of a hard stop. And then he goes to count two. There is no reference to willful, deliberate, and premeditated. There is nothing. There is simply a sentence saying he's charged with attempted murder. And then the very next paragraph goes into the discussion of what constitutes an attempt. So there really is a, there's no, even the words willful, deliberate, and premeditated in the instructions at least are never mentioned again after the discussion of count one. Is it not in the verdict form? I thought there was some reference to it in the verdict. There was a reference to it in the verdict form. It's not defined in the verdict form. No definition, but the phrase premeditated was. It is in the verdict form. And that's at the end of the case. It's unclear whether really any of the jurors looked at that other than the foreperson. And by that time, the deliberations, I would suggest, are essentially over. I mean, this is at the tail end before the verdict is inferred. I'm sorry. I thought you were finished with your answer. Please finish. No, just that it's sort of like checking the terms and conditions, you know, at the end of ordering something online. I mean, it's, and I apologize, but it's, it was, if that, in fact, the banks court, the California Supreme Court, and I admit it's odd for us to be relying heavily on a California Supreme Court case, but that happened in the banks case. And the California Supreme Court rejected that as something that somehow backfilled or cured the problem with the omission of the instruction in the attempted murder count in that case. The sticking point for me here is our standard of review, which is exceedingly differential because of AEDPA. And the state court, the California Court of Appeal, explained why banks was different and explained why in all the circumstances here they felt it was not prejudicial in any way. And I guess my problem is I don't necessarily see what's incorrect under the AEDPA standard or unreasonable in their discussion. Yes, Your Honor. In our briefs, we, there's really two responses to that. Number one, we argue, and this is not necessarily necessary for relief for Mr. Tibbs, but we argue that the state court, when they analyzed the prejudice with respect to the missing instruction, after their discussion of banks, they adopted wholesale their discussion of the, let's say, the bad facts in the case for Mr. Tibbs from their sufficiency of evidence discussion, which preceded it. So essentially they adopted and applied a Jackson versus Virginia analysis to a constitutional error question. And the standards and the tests that are to be applied between a sufficiency claim and a constitutional error claim are very different. Well, they also distinguished banks at some length before discussing the evidence. We frankly, as it's spelled out in our briefs, we think that their effort to distinguish banks has failed on every single point. Is that something that we can correct? It wasn't corrected by the California Supreme Court, who would have every incentive it seems to me to enforce a very recent decision. They denied a petition for review in this case. Right. So how is it that we get to enforce banks? How is it that we get to say, oh, no, that's not what California law means. This is what California law means. Well, banks, we obviously believe banks was decided correctly. But even if banks didn't exist, we would still be arguing. You'd have a very different argument here. You'd have a very different task if you didn't have banks. No, I think that… One thing, you and I wouldn't be having this exchange right now. I wouldn't have been appointed. Right. That's true. First of all, the denial of the… And I see I'm out of time here. But the denial by the California Supreme Court is much like a denial of certiorari, I would submit. So it's a very high-volume court, and the fact that they decided not to take up this very fact-specific case, I think, is of limited presidential impact. One last question, Kallis, before you sit down. Did the jury have a copy of these instructions? They did. They did. Okay. They did. You'll want to save the rest for rebuttal, I assume. Thank you, Your Honor. Yes. Thanks. Good morning, Your Honors, and may it please the Court. Christopher Beasley, Deputy Attorney General. On behalf of the Respondent. Judge Graver, you're absolutely correct that the AEDPA standard of review is the lens through which this case has to be evaluated, the question being whether the California Court of Appeal was unreasonable in its application of federal law and unreasonable in its determination of the facts. In its application of federal law, in reviewing the instructions that were given here, the California Supreme Court recognized that its task was to look at the instructions as a whole. The Supreme Court or the Court of Appeal? I'm now confused. I'm sorry? You just said the California Supreme Court was doing something, and I didn't know if you were talking about this case. I mean the State Court of Appeal. Okay. Thank you. Yes. So the State Court of Appeal had to determine, well, when it did its determination, it applied federal law. It recognized that in order to evaluate an instructional error, as claimed in this case, that it had to review the instructions as a whole, together with the evidence, and then had to determine whether the omission of the instruction rendered the trial fundamentally unfair. And in addressing that question, the Court looked at all the instructions and concluded there was nothing that cabined the jury to only consider willfulness, premeditation, and deliberation, those definitions that were provided for the murder instruction, only to apply it to the murder instruction. That's the fundamental difference between the banks' decisions. Does it matter that it was definitional rather than an element? That is, if the Court had left out an element, it might be a different ballgame, it seems to me. Well, I would agree that this is elemental. The willfulness, premeditation, deliberation, that is an element for first-degree attempted murder. And ultimately what the instruction would give the jury is the definition of that. Now here, the jury was told all allegations must be proven beyond a reasonable doubt. The jury was also told, as you've observed, Judge Graber, that the jury was to consider all the instructions as a whole. And as Judge Harpool pointed out, the jury verdict form included the language, a special form for premeditation, willfulness, and deliberation. And beyond that, the trial court at the outset had given the jury a reading of the information, the charging document, to let the jury know these are the allegations. So those are some of the fundamental differences between the banks' case and this case. In banks, the defendant wasn't even charged in the indictment with willfulness, premeditation, deliberation. The first that it ever came up was on that verdict form. And in banks, there was explicit language that cabined the willfulness, premeditation, deliberation definition to just the murder count. Nothing like that happened here. And so the Court of Appeal, in determining whether this was instructional error, whether this rose to the level of a due process violation, reasonably applied controlling federal law to conclude that there wasn't a constitutional violation. That alone precludes habeas relief here. But setting that aside, even if there had been a violation, the Court of Appeal went on to explain that if there was such a violation, it was harmless. It was harmless because of the strength of the evidence. It was also harmless because of the way that the instructions were ultimately presented to the jury. That definition was on the same page. Judge Bybee asked, you know, was a copy of the instructions given? Yes, they were. And on the very selfsame page defining attempted murder, just above it, is the definition for the premeditation, deliberation, and willfulness applying for the murder count. So all of that together shows that this was harmless. The Court of Appeal's decision applying the Chapman standard of review was also reasonable. There was nothing that was so obvious or indisputable that would overcome the AEDPA standard of review. Unless this Court has any further questions, we would submit it. I don't believe that we do. Thank you. Thank you, Your Honor. Mr. Crouchley, you have a little time remaining. Thank you, Your Honor. Just briefly, you mentioned the distinction between the definition and the element. And as Mr. Beasley stated, it really is an element. We're talking about an element here. And in the jury instructions for count two, there's no reference to willful, deliberate, and premeditated. There's just nothing on that. It's not as if they say it and then fail to define it. So it's completely absent from the jury instructions with respect to the charge. Except on the jury form. Except in the jury form. And again, with respect to the jury form, the jury form doesn't define it either. I think the jury either applied a lay definition to it. Well, why would that be a reasonable conclusion? If they understood that they had to look at that question and they received only one definition, and, as you concede, a correct definition, why wouldn't they look at that definition? Why wouldn't that be the assumption? Because they were told to look at all the instructions together. If they did that, they would be not following their instructions. And I think that's important. They would literally be disregarding the instructions that the judge gave them, that they have to look for the definition per count, per each count. And common sense, you may want to say, well, okay, it said murder. This was not a murder charge. So they could have swapped and traded the definitions here. And I submit that under the rule that jurors follow instructions, and I don't want to say that we have to defy common sense to reach a judgment of relief here because there is ample evidence that this was not a willful, deliberate, and premeditated murder under the circumstances which we've spelled out in our briefs and I won't spend time covering. But jurors are told to disregard an answer that's improperly given. They're told to apply hearsay for a particular purpose other than its truth. They're told to apply 404B or in state court 1101B evidence just to show knowledge as opposed to the fact that this guy has done bad things in the past. I mean, there are all sorts of things that the system requires us to assume that jurors follow instructions for the system to work. And I'm submitting to you that that's what happened here. The judge made it clear that they could not. And, of course, in the normal course of things, you don't want jurors to swap out elements and definitions between accounts. Counsel, you've used more than your time, and I think we do understand the position that you're advancing. So we thank you both for helpful arguments, and the case just argued is submitted for decision.
judges: Graber, Bybee, Harpool